UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHISN DIVISION

SCOTT N.[1],

                    Plaintiff,          Civil Action No.: 24-13238

v.                               David R. Grand[2]
                               United States Magistrate Judge

COMMISSIONER OF,
SOCIAL SECURITY,

                    Defendant.
_____/

## OPINION AND ORDER ON CROSS-MOTIONS
## FOR SUMMARY JUDGMENT (ECF Nos. 7, 9)

Scott N. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging

the final decision of Defendant Commissioner of Social Security ("Commissioner")

denying his application for Disability Insurance Benefits ("DIB") under the Social Security

Act (the "Act").  Both parties have filed summary judgment motions and consented to the

undersigned as presider pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.  (ECF No.

3).

For the reasons set forth below, the Court finds that substantial evidence supports

the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 3).

Act.   Accordingly, the Court will **GRANT** the Commissioner's Motion for Summary Judgment **(ECF No. 9)** and **DENY** Plaintiff's Motion for Summary Judgment **(ECF No. 7)**.

### I.      Background

Plaintiff was 49 years old at the time of his alleged onset date on January 11, 2020, and at 6' tall weighed approximately 145 lbs.  (PageID.25, 200, 61).[3]  He did not graduate from high school, though he completed nearly all the requirements to do so.  (PageID.62-63).  Prior to the alleged onset of disability, Plaintiff did "concrete work," which involved "adding and securing walls," "[s]etting forms and pouring walls and stripping walls." (PageID.65-66).  He now alleges disability resulting from "severed rotator cuff, torn bicep tendon, nerve damage left elbow, nerve damage left scapula, severe muscle spasms in back & neck-left side."  (PageID.79).

After Plaintiff's application for DIB was denied at the initial level on March 22, 2022, and on reconsideration on October 27, 2022 (PageID.114, 121), he timely requested an administrative hearing, which was held on September 6, 2023, before ALJ Paul Jones. (PageID.57).  Plaintiff, who was represented by attorney Steven Stilman, testified at the hearing, as did vocational expert ("VE") Larissa Boase.  (*Id.*).  In a written decision dated October 26, 2023, the ALJ found that Plaintiff is not disabled under the Act.  (PageID.22-43).  On October 2, 2024, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review.  (PageID.16).  Plaintiff

---

[3] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 5-1 and 5-2.

filed for judicial review of the final decision on December 5, 2024.  (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, disability reports, and testimony as to his conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

## II.      The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

3

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at \*7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).   "The burden of proof is on the claimant throughout the first four steps ….  If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."   *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ found that Plaintiff was not disabled under the Act.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 11, 2020, his alleged onset date.  (PageID.27).  At Step Two, the ALJ found that Plaintiff has the following severe impairments: "status post C6-7 fusion, status post right rotator cuff tear/repair, status post failed left rotator cuff tear/repair, and neurodevelopmental disorder."  (*Id.*).  At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment.  (PageID.28).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding,

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), but can never climb ladders, ropes, or scaffolds; only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; only occasionally overhead reach, bilaterally;

> with no exposure to vibration or hazards; in simple, routine, repetitive work; with only occasional changes in the work setting.

(PageID.30).

At Step Four, the ALJ determined that, at all relevant times, Plaintiff has been unable to perform his past relevant work. (PageID.42). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Plaintiff can perform a significant number of jobs that exist in the national economy. (*Id.*). As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (PageID.43).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### III.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court

looks to an existing administrative record and asks where it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high.   Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted).   Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.   *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).   The court "may look to any evidence in the record, regardless of where it has been cited by the Appeals Council," or in this case, the ALJ.   *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.   *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).   If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."   *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

####    IV.    Analysis

In his motion for summary judgment, Plaintiff raises a single argument – that the ALJ failed to conduct a proper supportability analysis of Marvin Bleiberg, M.D.'s ("Dr. Bleiberg") medical opinion, which he found unpersuasive.  (ECF No. 7, PageID.1038-45).

Under the revised regulations applicable to claims, like Plaintiff's, filed on or after March 27, 2017, ALJs must evaluate the persuasiveness of medical opinions and "explain how [they] considered the supportability and consistency" of such opinions – the two "most important" factors – in their decision.  20 C.F.R. §§ 404.1520c(b)(2).  As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be."  20 C.F.R. §§ 404.1520c(c)(1).  As to the second factor (consistency), "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be."  20 C.F.R. §§ 404.1520c(c)(2).  "The regulations require that the ALJ sufficiently articulate his reasoning for his persuasiveness findings."  *Mistie W. v. Comm'r of Soc. Sec.*, No. 23-10696, 2024 WL 992160, at *3 (E.D. Mich. Mar. 7, 2024) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 902 (E.D. Mich. 2021)).  For the reasons discussed below, the Court finds that the ALJ reasonably evaluated the supportability of Dr. Bleiberg's opinion, and that substantial evidence supports his conclusion that Dr. Bleiberg's opinion is unpersuasive.

Dr. Bleiberg evaluated Plaintiff on June 21, 2022, upon referral by Plaintiff's attorney.  (PageID.1002).  Dr. Bleiberg is a Medical Doctor, Board-Certified in Physical

7

Medicine and Rehabilitation and Pain Medicine.  (PageID.1012).  Dr. Bleiberg based his

opinion on Plaintiff's "history, physical examination, and review of the provided medical

record" to conclude that "[t]he following work restrictions are appropriate:"

> 1. No lifting, pushing, or pulling greater than 5 pounds with the left upper limb.
> 2. No lifting, pushing, or pulling greater than 10 pounds with the right upper limb.
> 3. No over the shoulder level work with the left upper limb.
> 4. No repetitive activity involving the left shoulder.
> 5. Limit reaching with the left upper limb to occasional only.
> 6. No work requiring static neck positioning or repetitive neck movement.
> 7. Alternate the upright position with the lying down position to alleviate the weight of the head and effect of gravity on the cervical spine on an as-needed basis. Duration should be permanent.

(PageID.1010-11).  Dr. Bleiberg also opined that Plaintiff could only sit, stand, and walk

for 30 minutes at a time each without interruption.  (PageID.1014).  Finally, Dr. Bleiberg

opined that Plaintiff could only occasionally perform reaching, handling, fingering, feeling,

and push/pulling with either the right or left hand, and only occasionally operate foot

controls with either the right or left foot.  (PageID.1015).

The ALJ found Dr. Bleiberg's opinion "not persuasive," explaining:

> Dr. Bleiberg only examined claimant one time and his limitations are extreme and are not supported and consistent by [sic] the medical evidence. For example, claimant's treating source stated claimant could lift and carry 30 pounds, which is more persuasive. [] Claimant's exams generally found he did have limitations in his left shoulder, but his right upper extremity had full strength and full range of motion and he had full grip strength with no evidence of manipulative limitations in either hand. [] Further, it was often noted claimant's left upper extremity did have normal strength and range of motion. [] Moreover, his walking, standing, sitting [limitations] are unsupported. For instance, claimant's gait was generally normal and he used no assistive device. [] Further, claimant's exams repeatedly

8

> found he had normal strength, reflexes, sensation, and range of motion in his lower extremities. [] Also, there is no evidence claimant had any respiratory impairments or hearing difficulties that would warrant the above environmental limitations. Claimant's exams frequently found his lungs were clear of auscultation with no wheezes, rales, or rhonchi. []

(PageID.40) (citations omitted).

As noted, Plaintiff challenges the ALJ's supportability analysis, asserting that the ALJ "failed to explain how he considered the 'supportability' of this opinion under 20 C.F.R. § 404.1520c(c)(1)." (ECF No. 7, PageID.1041). More specifically, Plaintiff argues that "the ALJ's explanation reads only as an analysis of the 'consistency' of Dr. Bleiberg's opinion, rather than a properly articulated analysis of *both* the supportability and consistency factors." (*Id.*, PageID.1042) (emphasis in original). For the reasons discussed below, the Court finds no reversible error in this regard.

First, Plaintiff objects that the ALJ's supportability analysis was deficient because where the ALJ did cite to Dr. Bleiberg's own evidence, it was done in conjunction with "several other medical records, without taking any time to parse out Dr. Bleiberg's finding separately." (*Id.*, PageID.1041). But this does not hinder the Court's ability to evaluate the sufficiency of the ALJ's supportability analysis. Take for example Dr. Bleiberg's opinion that Plaintiff could not perform "lifting, pushing, or pulling greater than 10 pounds with the right upper limb." (PageID.1011). In addressing that opinion, the ALJ noted that "[Plaintiff's] right upper extremity had full strength and full range of motion and he had full grip strength with no evidence of manipulative limitations in either hand," and cited, among other evidence, Dr. Bleiberg's physical examination of Plaintiff, which found that

Plaintiff had "full strength on the right side in the same muscle groups at 5/5," as well as "normal" "resistive shoulder abduction testing," and no tenderness on the right side. (PageID.40, citing PageID.1006). Also, earlier in the ALJ's decision, he noted that Dr. Bleiberg administered an electromyography (EMG) to Plaintiff, but that it "failed to demonstrate carpal tunnel syndrome." (PageID.28, citing PageID.1008) ("There was no electrodiagnostic evidence for carpal tunnel syndrome nor cervical radiculopathy or more generalized brachial plexopathy."). In that same section of the ALJ's decision, he wrote that Plaintiff's "exams often found normal range of motion in his hands and fingers with normal grip strength," and cited, among other evidence, Dr. Bleiberg's report as support. (PageID.28) (citing PageID.1006) ("Muscle tone was noted to be relatively normal. **Manual muscle testing revealed weakness in left shoulder abduction and left elbow flexion with a strength of 4/5. It was full strength on the right side in the same muscle groups at 5/5.** Full strength of 5/5 was noted in bilateral elbow extension, wrist flexion and extension, and hand grip.") (emphasis in original).

In addition, while citing to Dr. Bleiberg's own exam notes, the ALJ found that Dr. Bleiberg's extreme limitations related to "walking, standing, [and] sitting are unsupported." (PageID.40). For example, the ALJ noted that "claimant's gait was generally normal and he used no assistive device," and cited as support Dr. Bleiberg's findings that "[e]valuation of gait revealed normal speed. There was no ataxia. There was no antalgia. There was no assistive device utilized. The claimant was able to heel and toe walk without difficulty. Patient was grossly normal." (*Id.*, citing PageID.1006). Similarly, as for the extreme sitting, standing, and use of foot control limitations imposed by Dr.

Bleiberg, the ALJ noted that Plaintiff generally "had normal strength, reflexes, sensation, and range of motion in his lower extremities," and cited Dr. Bleiberg's same record which indicated that Plaintiff's "[s]itting and standing balance was within normal limits. Sensation was intact to soft touch. There was no clonus. Great toe proprioception was within normal limits. There was no nystagmus appreciated. Plantars were downgoing bilaterally." (*Id.*, citing PageID.1006).

While the foregoing shows that the ALJ reasonably evaluated the supportability of Dr. Bleiberg's opinion, and that substantial evidence supports his conclusion that Dr. Bleiberg's opinion is unpersuasive, given Plaintiff's argument that "the ALJ's explanation reads only as an analysis of the 'consistency' of Dr. Bleiberg's opinion, rather than a properly articulated analysis of *both* the supportability and consistency factors," it is worth noting that some of the ALJ's consistency analysis overlaps with the supportability analysis; indeed, Dr. Bleiberg explicitly noted that his conclusions relied, in part, on Plaintiff's other medical records. (PageID.1006).  While Plaintiff argues that the ALJ's "analysis focuses on other medical evidence of record" (ECF No. 7, PageID.1041), Dr. Bleiberg specifically directed "the reader" of his opinion to consider Plaintiff's medical records because he had "utilized [them] to help come to a conclusion."  (PageID.1006). Thus, to some extent, Plaintiff merely accuses the ALJ of doing precisely what Dr. Bleiberg instructed by examining the medical records themselves – as well as the results of Dr. Bleiberg's physical exam – in determining the supportability of his opinion.

Next, Plaintiff objects that "the ALJ only cited a small handful of the negative findings included in Dr. Bleiberg's report," but it is the ALJ's job to weigh the evidence,

and the ALJ need not discuss every piece of evidence in the record to satisfy this obligation.

*Kornecky*, 167 F. App'x at 508.  (ECF No. 7, PageID.1044).  As explained by the *Hairston* court:

> The ALJ does not "cherry pick" the evidence merely by resolving some inconsistencies unfavorably to a claimant's position.  *Smith v. Comm'r of Soc. Sec.,* 2013 WL 943874, at *6 (N.D. Ohio 2013) [internal quotations omitted]. The undersigned cannot conduct a *de novo* review of the record evidence, and the findings of the ALJ are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772–73 (6th Cir.2001) (citation omitted); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir.1999) ("Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached.") (citation omitted). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986) (citation omitted).

*Hairston v. Comm'r of Soc. Sec.,* No. 14-13218, 2015 WL 4633935, at *14 (E.D. Mich. Aug. 3, 2015).

The Plaintiff draws the Court's attention to the following findings by Dr. Bleiberg:

- Involuntary muscle spasms noted in the posterior cervical musculature and upper trapezius on the left;
- District trigger points noted in the left upper trapezius muscle;
- Weakness on left shoulder abduction and left elbow flexion  with 4/5 strength;
- Decreased resistive shoulder abduction resting on the left side;
- Crepitus of the left shoulder;
- Positive empty can testing on the left;

(ECF No. 7, PageID.1042).   None of Plaintiff's evidence undermines the Court's

conclusion that substantial evidence supports the ALJ's finding that Dr. Bleiberg's opinion

is unpersuasive.  While the Court will not re-weigh the evidence, it notes that Plaintiff only

12

points to evidence relating to the left upper extremity – which the ALJ recognized caused certain limitations (PageID.40 (noting that Plaintiff's "exams generally found he did have limitations in his left shoulder . . .")) – and that evidence does not address the ALJ's discussion of the significant incongruity between Dr. Bleiberg's findings and his opinions related to Plaintiff's right-upper extremities and lower extremities.

Plaintiff also attempts to undermine the ALJ's supportability conclusion by drawing attention to Dr. Bleiberg's summary of the medical evidence, "including severe *bilateral* foraminal stenosis at C5-C6 noted on MRI of the cervical spine in October 2021." (ECF No. 7, PageID.1043) (emphasis in original). But the ALJ cited that MRI several times and reasonably found that it did not support Dr. Bleiberg's "extreme limitations." (PageID.34, 40). Indeed, in addition to the ALJ's other supportability analyses discussed above, in discussing the MRI results, the ALJ noted records which show that two days later, Plaintiff had "normal strength in his upper and lower extremities," "normal reflexes," intact sensation, and "a normal gait." (PageID.34).

Finally, Plaintiff's principal reliance on *James A. v. Comm'r of Soc. Sec. Admin.,* No. 3:22-CV-207, 2023 WL 6307640, at *4 (S.D. Ohio Sept. 28, 2023), is unavailing. That case held that "the ALJ erred by conflating the supportability and consistency factors and by failing to articulate how she evaluated the supportability factor in regard to the opinions provided by [several doctors]." But in *James A*, the ALJ had wholly "fail[ed] to explain how she considered the supportability of the [doctors'] opinions," *James A.*, 2023 WL 6307640, at *4, whereas here, as explained above, the ALJ cited to and discussed Dr. Bleiberg's physical exam throughout his supportability analysis, and evaluated the strength

13

of the connection between the results of the physical exam and the limitations he imposed.

For all of the foregoing reasons, the Court finds that the ALJ reasonably evaluated the supportability of Dr. Bleiberg's opinion, and that substantial evidence supports his conclusion that Dr. Bleiberg's opinion is unpersuasive.  Accordingly, the Court

## V.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Commissioner's Motion for Summary Judgment **(ECF No. 9)** is **GRANTED**, Plaintiff's Motion for Summary Judgment **(ECF No. 7)** is **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is **AFFIRMED**.


Dated: March 13, 2026                              s/David R. Grand
Ann Arbor, Michigan                                DAVID R. GRAND
                                                   United States Magistrate Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 13, 2026.

                                                   s/Eddrey O. Butts
                                                   EDDREY O. BUTTS
                                                   Case Manager